UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BOBBY RAY YOUNG                           CIVIL ACTION NO. 06-cv-0698

VERSUS                                    JUDGE HICKS

DR. GINGER BLACK, ET AL                   MAGISTRATE JUDGE HORNSBY


**REPORT AND RECOMMENDATION**

Bobby Ray Young ("Plaintiff") is an inmate in the custody of the Louisiana
Department of Public Safety and Corrections at the Winn Correctional Facility. Plaintiff
filed a pro se civil action alleging that he received improper medical care while he was
hospitalized at the Louisiana State University Health Science Center ("LSU-HSC") and
treated by Dr. Ginger Black and Dr. Ishak Mansi. Over the course of this civil action, this
court has dismissed all claims against LSU-HSC and Dr. Mansi, leaving Dr. Black as the sole
defendant. See Doc. 40. Dr. Black has submitted a Motion for Summary Judgment
(Doc. 43), which this court now reviews. For the reasons that follow, it is recommended that
the motion be granted.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be
granted against a party who has failed to make a sufficient showing of the existence of a
genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When
making a determination on a motion for summary judgment, the court must construe all facts
and inferences in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy,

Inc., 526 F.3d 243, 248 (5th Cir. 2008). The only relevant facts, however, are those presented in affidavits or other competent summary judgment evidence; facts asserted in unsworn memoranda are not considered. Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence").

**Summary Judgment Record**

At the time of events at issue, Plaintiff was an inmate at the Winn Correctional Facility. Plaintiff was admitted to LSU-HSC on December 27, 2005, treated for gastrointestinal bleeding, and discharged on December 29, 2005. Plaintiff alleges in his complaint that he was discharged prematurely, placing him at risk of suffering a stroke or heart attack.

Along with the Motion for Summary Judgment, Dr. Black submits her own affidavit, the affidavit of Dr. Mansi, and certified medical records maintained by LSU-HSC pertaining to Plaintiff's medical treatment. All of these records are competent summary judgment evidence. Affidavits are specifically admissible under Fed. R. Civ. Proc. 56, and medical records are frequently considered on summary judgment in assessing prisoner complaints regarding medical care. See, e.g., Gobert v. Caldwell, 463 F.3d 339, 347 n. 23 (5th Cir. 2006) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

The medical records and affidavits show that Plaintiff had a history of high blood pressure, chronic anemia, and gastrointestinal bleeding prior to his admission for this particular episode. Plaintiff was admitted on December 27, 2005, complaining of blood in his stool. Plaintiff gave his informed consent to undergo an endoscopy and colonoscopy. According to hospital records, and the affidavits from Drs. Black and Mansi, these procedures revealed several conditions that Plaintiff was suffering from: candidal esophagitis, peptic ulcer disease, angiodysplasia of the colon (multiple rectal arterio-venous malformations), and large internal hemorrhoids. These last two conditions (angiodysplasia and large internal hemorrhoids) could have contributed to Plaintiff's recurrent gastrointestinal bleeding. Plaintiff was started on medications to treat his esophagitis, peptic ulcer, and hypertension, and was put on a clear liquid diet "to give his GI [gastrointestinal] tract some rest."

After these initial procedures, Plaintiff again complained of blood in his stool. This was confirmed by a nurse who observed blood in Plaintiff's commode. Plaintiff underwent a second colonoscopy, which again demonstrated the original diagnosis of angiodysplasia and large internal hemorrhoids. This second colonoscopy showed no active bleeding, leading the gastroenterologists to conclude that the internal hemorrhoids were the source of the bleeding. The gastroenterologist recommended a blood transfusion and continued observation for continued bleeding.

According to Dr. Black, since it was the internal hemorrhoids that caused the blood loss, this is when "the patient's underlying cause for GI bleed became surgical in nature and not medical." The surgical consult resulted in a determination that Plaintiff's hemorrhoids could be handled on an outpatient rather than an inpatient basis. Accordingly, a surgical follow-up was included in the discharge orders.

Before being discharged, however, the gastroenterologist's recommendations were taken up, and Plaintiff was given a blood transfusion to improve his anemia. Plaintiff was held in the internal medicine division for further observation. Over the next two days, Plaintiff continued to complain of blood in his stool. Despite these complaints, no health care professional reported seeing any blood. Nurse's notes for the next two days indicate that no blood was observed in Plaintiff's stool on December 28 and December 29. On December 29, Dr. Black conducted another rectal exam on Plaintiff. Dr. Black found that the contents of the rectal vault were trace hemoccult positive. According to Dr. Black, this indicates that Plaintiff was losing microscopic amounts of blood in his stool. Plaintiff's medical records indicate that Plaintiff had been doing so chronically.

This is where Plaintiff's account diverges from Dr. Black's. Plaintiff has submitted a sworn declaration by Francis Longino, a correctional officer at the Winn Correctional Center, who was present at the hospital with Plaintiff. The declaration is in substantial compliance with 28 U.S.C. § 1746. Such statements constitute competent summary judgment evidence. See Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003). Officer

Longino's declaration states that a nurse, whose name is unknown, took Plaintiff's blood pressure, and indicated that it was too high for Plaintiff to be discharged. Officer Longino also states that he personally observed blood in Plaintiff's commode. According to Officer Longino's account, a nurse was called over to see, and she told Plaintiff that she did not need to see it anymore, and she instructed Plaintiff to flush the toilet. After this occurred, Dr. Mansi and "Dr. Ginger" (presumably Dr. Ginger Black, defendant), asked what color the blood was, to which Officer Longino replied, "cranberry red."

The Discharge Summary prepared by Dr. Black lists Plaintiff's blood pressure at the time of discharge as 137/79. Dr. Black wrote that Plaintiff was not complaining of any pain, but was complaining of blood in his stool "that [had been] unwitnessed." According to these notations and the other vital signs that were checked, Dr. Black deemed Plaintiff's condition "appropriate for discharge."

Plaintiff is quick to contend, however, that the stated blood pressure on the Discharge Summary was incorrect, and he states in his own declaration that this was a "false and fabricated statement" that put him at risk of suffering a heart attack or stroke. The graphic chart of Plaintiff's vital signs, included with the medical records, indicates that the Discharge Summary (made at 5:33 p.m.) did not contain the most recent blood pressure reading. Dr. Black states in her affidavit that the blood pressure reading referred to in the Discharge Summary (137/79) was taken at 12:00 p.m. (a review of the medical records indicates that it was actually taken at 8:00 a.m.). Plaintiff's 4:00 p.m. blood pressure reading on the day

of his discharge was charted as 146/92. Dr. Black explains that there is typically a delay of one to two hours between when a nurse checks a patient's vital signs and actually records them on the chart. Dr. Black states that the vital signs noted on the Discharge Summary may have been the most recent readings available to her. Dr. Black testifies that, despite the discrepancy, she would have discharged Plaintiff even if she had known of the more recent 146/92 blood pressure reading.

Plaintiff was discharged with reference to the earlier (137/79) readings. The Discharge Summary noted that Plaintiff's high blood pressure had been treated throughout Plaintiff's stay with hydrochlorothiazide and nifedipine. The summary also observed that Plaintiff's blood pressure remained slightly elevated when discharge was ordered ("[Plaintiff's] blood pressure was still a little elevated at around the 140 to 150 range"),[1] and the Discharge Summary indicates that Plaintiff was to be sent home on a higher dose of nifedipine to treat this. In accordance with the surgical consult's determination that Plaintiff should be treated on an outpatient basis, Plaintiff was discharged with a follow-up ordered with the surgical staff.

After the discharge, Plaintiff did follow up with the surgical staff and on March, 3, 2006, Plaintiff underwent an internal hemorrhoidectomy. According to Dr. Mansi, this surgery was not undertaken during Plaintiff's hospitalization in December because, even

---

[1] This reference shows that Dr. Black was aware that Plaintiff's blood pressure had often been higher than the 137/79 reading.

though Plaintiff's condition had been treated, the source of the bleeding was unknown. Dr. Mansi felt that it was "unfair" to expose Plaintiff to a number of minor surgeries (he had already undergone one external hemorrhoidectomy before the hospital visit at issue here) while the source of the bleeding was still not known.

**Analysis**

For Plaintiff to prevail on a claim that his medical care was so deficient or inadequate as to give rise to a constitutional violation, he must show that Dr. Black was "deliberate[ly] indifferen[t] to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference is an "extremely high standard to meet." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). This standard "encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997). Mere disagreement with the medical diagnosis or course of treatment does not give rise to a constitutional violation. Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

The issue is not whether Plaintiff received the treatment he felt he needed, but rather what treatment was medically necessary at the time. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) ("the essential test is one of medical necessity and not one simply of desirability"). There is no doubt that Plaintiff's medical problems are serious and required medical treatment. Far from abrogating her duties as a doctor, though, Dr. Black was attentive to

Plaintiff's medical needs. In response to Plaintiff's conditions, he was given two colonoscopies to diagnose his conditions, was kept at the hospital for monitoring and treatment, his preexisting hypertension was treated with medication, and was given a surgical consult to determine what, if any, surgery might be necessary. Plaintiff later underwent surgery (an internal hemorrhoidectomy) to treat his condition.

The length of a patient's hospital stay is a matter of medical judgment. Dr. Black determined that Plaintiff was well enough to be discharged from the hospital after being treated. This determination was made despite Plaintiff's complaints of continued blood loss. Dr. Black noted Plaintiff's complaints in the Discharge Summary, but noted that the bloody stool remained "unwitnessed." Officer Longino's declaration mentions a discussion with "Dr. Ginger" (who this court assumes to be Dr. Ginger Black) regarding Plaintiff's alleged bloody stool. Dr. Black apparently determined that discharging Plaintiff was appropriate despite his complaints. Plaintiff attacks this determination as being deliberately indifferent to Plaintiff's serious medical needs. Dr. Black's determination, though, does not suggest that she was deliberately indifferent to his medical needs. Its context shows, instead, that Dr. Black made a reasoned medical determination based on the facts before her.

Plaintiff's discharge was ordered with a surgical follow-up. This was in line with the surgical consult's recommendation that Plaintiff be treated on an outpatient basis with a follow-up after discharge. Dr. Black ordered in her discharge summary that Plaintiff follow up with the surgical staff to determine what treatment might be necessary. Plaintiff alleges

that his subsequent hemorrhoidectomy proves that Dr. Black ignored his complaints of continued blood loss and shows her deliberate indifference to his well-being. This subsequent procedure does not show that Plaintiff was given constitutionally inadequate medical treatment by Dr. Black. Rather, it is additional evidence showing that Dr. Black was not deliberately indifferent to Plaintiff's medical needs. Her discharge determination contained an order for a surgical follow-up, which ultimately resulted in Plaintiff's internal hemorrhoidectomy.

Plaintiff has stated nothing more than mere disagreement with the course of treatment he received. This, as stated above, is not a valid claim. It has been consistently held that an inmate who has been examined and treated by medical personnel does not set forth the required showing of deliberate indifference. See, e.g., Stewart, 174 F.3d at 537; Banuelos, 41 F.3d at 235. Plaintiff was admitted to LSU-HSC, treated, and discharged by Dr. Black with her order for a surgical follow-up. Though summary judgment requires that this court view facts in a light most favorable to the non-movant—in this case Plaintiff—it does not require that we read malice into the record. The Constitution did not require that Dr. Black keep Plaintiff at the hospital until he was symptom free. The record shows that there is no genuine issue of material fact, and Dr. Black is entitled to judgment as a matter of law.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 43) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of June, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE